# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

    Plaintiff,

v.                                                No. CR. 17-831 MCA

ERIC SALAZAR,

    Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Defendant Eric Salazar's Motion to Suppress Evidence as a Result of Fourth Amendment Violation. Doc. 20. On October 26, 2017, the Honorable M. Christina Armijo, Chief United States District Judge, referred this matter to me to recommend an ultimate disposition of this Motion. Pursuant to the Order of Reference, I held a hearing in this matter on December 21, 2017. Doc. 30. Given the current trial setting, I informed the parties at the hearing that I would be entering oral findings and my recommended disposition from the bench in order to give them sufficient time to file objections to my report and recommendation and for Chief Judge Armijo to then consider any objections that are filed. Tr. at 124-25. I further informed the parties that the objection period would run from the entry of the transcript of the proceedings on the docket as it would constitute my written decision for purposes of 28 U.S.C. § 636(b)(1)(B) and (C). *Id.* The parties did not object to this procedure. *Id.*

Attached to this Order is the transcript of the proceedings in this case. My report and recommendation is contained on pages 126 to 163 and pages 166 to 170 of the attached transcript. This report and recommendation, however, is modified as follows:

1) Page 137, lines 8-11.  The test to determine whether a warrantless entry or search is justified by exigent circumstances has been updated.  The second prong of the current test is whether "the manner and scope of the search is reasonable." *United States v. Najar*, 451 F.3d 710, 718 (10th Cir. 2006); *Cortez v. McCauley*, 478 F.3d 1108, 1123–24 (10th Cir. 2007); *United States v. Gordon,* 741 F.3d 64, 70 (10th Cir. 2014).

2) Page 139, line 15. The word "in" is changed to the word "to".  This change more accurately reflects the testimony on page 10, line 19 through page 11, line 10 and on page 15, line 19 through page 16, line 2.

3) Page 142, line 9. As stated elsewhere in my findings, additional factors in support of exigent circumstances that justify the entry include Deputy Armijo's hearing of footsteps retreating farther into the interior of the apartment in response to his announcing the presence of law enforcement and the fact that police were responding to a priority two 911 call from a non-anonymous person who appeared to have credible information.

4) Page 145, lines 19-21.  This section of the transcript is modified to acknowledge that police talked to Defendant while he was in the bathroom, but that such conversation primarily involved police officers' attempt to convince Defendant to come out of the bathroom.  Police were not able to confirm or dispel their reasonable suspicion that Defendant was involved in criminal activity until they were able to address him outside of the bathroom.

5) Page 147, line 18. The phrase "for ID" is replaced with the phrase "for concealing ID".

6) Page 150, lines 10-13.  Although I conclude that the primary reason Detective Cornell went into the bathroom was to look for a weapon, I find his testimony that he also went into the bathroom to check for the presence of other people to be credible.

7) Page 151, lines 24-25. The citation to *United States v. Gordon* is corrected to *United States v. Walker*, 474 F.3d 1249, 1254 (10th Cir. 2007).

8) Page 152, lines 4-7.  Here, and at other places, I sometimes use the term "protective sweep" to describe a search permitted by the existence of exigent circumstances even in the absence of an arrest.  *See Walker*, 474 F.3d at 1254 (stating that although a "protective sweep" permitted pursuant to *Maryland v. Buie*, 494 U.S. 325, 327 (1990), may only take place incident to arrest, a sweep may nevertheless be permitted in the absence of an arrest under the exigent-circumstances doctrine set out in *Najar*).  This general use of the term "protective sweep" excludes protective sweeps in the first situation identified in *Buie* where incident to arrest and without any articulable suspicion "authorities can look in 'closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *United States v. Bagley*, No. 16-3305,  2017 WL 6419027 at *2 (10th Cir. December 18, 2017) (slip op.) (quoting *Buie*, 494 U.S. at 334).  It includes, however, "sweeps" justified, even in the absence of an arrest, by exigent circumstances.  Such exigent circumstance searches are similar to protective sweeps justified pursuant to arrest in *Buie's* second-identified situation where "authorities can look elsewhere in the house upon specific, articulable facts supporting a reasonable belief that someone dangerous remains in the house."  *Bagley*, 2017 WL 6419027 at *2.

9) Page 156, line 13. The number "133" is replaced with the number "71".

10) Page 158, lines 12-24 and page 159, line 20 through page 160, line 4.  I retract my initial conclusion that, assuming the search of the bathroom was legal, the extended seizure of the gun and NCIC check to determine whether the gun was stolen was, nonetheless, illegal.  As I set forth on page 25 of my analysis, police would be justified in seizing the gun if they saw the gun in plain view somewhere they were legally authorized to be during the time they were

3

investigating a domestic violence 911 call. This is because, as I noted on page 156 of the transcript, if an officer is lawfully positioned in a place from which an object can be plainly viewed, the officer is permitted to notice whatever is put on display and the observation of the article is generally not considered a search. *Gordon*, 741 F.3d at 71. "If an article is already in plain view, neither its observation nor its seizure would involve any invasion of privacy." *Id*. Accordingly, if law enforcement lawfully seized the gun, law enforcement could lawfully observe the serial number in plain view on the gun and run an NCIC check to determine if the gun was stolen. The record is not sufficiently developed to determine whether police held the gun longer than allowed by law before they checked to see if the gun was stolen. In other words, the record does not indicate whether police ran an NCIC check before or after they were able to speak with Defendant and determine that no domestic violence had taken place and that Defendant did not pose a threat. If the Court accepts my findings that Deputy Cornell unconstitutionally entered the bathroom where he then saw the gun in plain view and seized the gun, however, the Court does not have to resolve this issue. If Deputy Cornell could not legally enter the bathroom and seize the gun, he could not legally run an NCIC check on the gun.

    11) Page 161, line 19. The word "entry" is substituted for the word "search".

    12) Page 162, lines 16-20. I recognize the following language from *Walker*:

> In the context of this case, however, application of the exigent-circumstances doctrine to justify a sweep for the purpose of officer safety would eviscerate our precedent establishing an incident-to-arrest requirement for such a protective sweep. We note that both *Najar* and the Supreme Court opinion on which it relied, *Brigham City*, 547 U.S. 398, 126 S.Ct. 1943, 164 L.Ed.2d 650, involved Fourth Amendment intrusions justified by a threat to a civilian's safety. Therefore, absent clarification from an en banc court, we refrain from justifying this sweep by applying the exigent-circumstances exception based on officer safety.

*United States v. Walker*, 474 F.3d 1249, 1254 (10th Cir. 2007). One can argue that this language indicates that, even in the presence of exigent-circumstances, officers who seize but do not arrest

4

someone cannot conduct a sweep for purposes of officer safety. In *Najar*, however, the Tenth Circuit stated that the test to determine whether exigent circumstances justified a search is "whether (1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety *of themselves or others*, and (2) the manner and scope of the search is reasonable . . . ." *Najar*, 451 F.3d at 718 (emphasis added). The Tenth Circuit has since repeatedly reaffirmed this test. *See Cortez v. McCauley*, 478 F.3d 1108, 1123–24 (10th Cir. 2007); *United States v. Gordon,* 741 F.3d 64, 70 (10th Cir. 2014).

Further, it seems unlikely that *Walker* would prohibit police from protecting themselves against a deadly threat that arises when they seize, but do not arrest, someone. For instance, the Tenth Circuit in *Walker* determined that exigent circumstances existed to justify law enforcement's entry into the defendant's home after he responded to law enforcement's announcement of their presence with the statement, "Yeah, and I got a goddamn gun." *Walker*, 474 F.3d at 1253. Specifically, the Tenth Circuit determined that although police could have retreated "it was also reasonable for [police] to take control of the situation by entering to disarm Mr. Walker, who could otherwise continue to pose a danger to the officers and others. Because the officers could reasonably believe that they needed to enter Mr. Walker's home to protect their own safety, and because they acted reasonably in entering and restraining Mr. Walker, we hold that the officers committed no Fourth Amendment violation in those actions." *Id*. Assume, after police seized (but did not arrest) the defendant, an individual in another room of the house yelled, "I have a goddam gun too." Allowing police to enter the home based on the first comment, but not another room in the home based on the second comment, would be an anomalous result. Thus, I do not recommend concluding that police can never justify a sweep based on exigent circumstances related to officer safety. Instead, I read Tenth Circuit case law as

5

saying that, absent an arrest, police are not automatically allowed to search areas adjacent to someone they have seized for purpose of officer safety (the first situation recognized in *Buie*). This does not preclude police from protecting themselves against a known and exigent danger that arises in the course of the detention. Thus, I continue to recommend that exigent circumstances must have existed to justify Deputy Cornell's entry into the bathroom and that such exigent circumstances did not exist.

Except for the above modifications, the attached transcript of my findings and recommended disposition entered orally on the record constitute my report and recommendation. Based on the transcript of my recommended findings and the above modifications, I recommend that Defendant's Motion to Suppress Evidence as a Result of Fourth Amendment Violation be **GRANTED.** (Doc. 20).

**IT IS SO ORDERED.**

*[signature: Steve Yarbrough]*
**UNITED STATES MAGISTRATE JUDGE**

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**